## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JOSEPHINE M. JULES,

                Plaintiff,

v.

THE CITY OF NEW YORK,

                Defendant.

Master Docket No. 21 MC 100 (AKH)

Case No. 1:24-CV-10056-AKH

## DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW
## IN SUPPORT OF FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ............................................................................. 1

II.  PROCEDURAL HISTORY................................................................................. 2

III. LEGAL STANDARD...................................................................................... 3

IV. ARGUMENT ............................................................................................. 4

    A.  Plaintiff's Notice of Claim is Untimely and This Subsequently Filed Litigation Must be
        Dismissed.................................................................................................. 4

    B.  Plaintiff's Third Amended Complaint Fails to Allege a Special Duty Owed to Her by the
        City...................................................................................................... 10

      i.  Plaintiff has not asserted a special duty owed to her by the City. ................................ 11

      ii. Plaintiff's allegations concerning the purported acts of an alleged federal agent cannot
         establish a special duty owed to her by the City as a matter of law. .......................... 16

    C.  The Third Amended Complaint Should Be Dismissed With Prejudice as Repleading
        Would Be Futile........................................................................................ 19

V.  CONCLUSION........................................................................................... 21

## **TABLE OF AUTHORITIES**

### **Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ....................................................................................... 3

*Applewhite v. Accuhealth, Inc.*,
   995 N.E.2d 131 (N.Y. 2013) ..................................................................................... 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)) .............................................................................................. 3, 4

*Boland v. City of New York*,
   177 N.Y.S.3d 596 (N.Y. App. Div. 2d Dept 2022) .................................................. 18

*Cangemi v. United States*,
   13 F.4th 115 (2d Cir. 2021) ................................................................................. 5, 11

*Cassidy v. New York City Tr. Auth.*,
   235 N.Y.S.3d 267 (N.Y. App. Div. 1st Dept 2025) .................................................. 9

*Cohen v. Avanade, Inc.*,
   874 F. Supp. 2d 315 (S.D.N.Y. 2012) ...................................................................... 4

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000) ................................................................................. 5, 24

*Downing v. New York City Housing Authority*,
   117 N.Y.S.3d 464 (N.Y. Sup. Ct. Kings Cnty. July 25, 2019) ............................... 13

*Durr v. Slator*,
   558 F. Supp. 3d 1 (N.D.N.Y. 2021) ...................................................... 4, 13, 18, 25

*Edmondson v. Raniere*,
   751 F. Supp. 3d 136 (E.D.N.Y. 2024) .................................................................... 12

*Fair v. Verizon Communications, Inc.*,
   621 Fed.Appx. 52 (2d. Cir. 2015) ............................................................................ 4

*Ferreira v. City of Binghamton*,
   194 N.E.3d 239 (N.Y. 2022) .............................................................................. 14, 15

*Geltzer v City of New York*,
   234 N.Y.S.3d 104 (N.Y. App. Div. 2d Dept 2025) .................................................. 18

*Ghartey v. St. John's Queens Hosp.*,
   869 F.2d 160 (2d Cir. 1989) ............................................................................... 5, 12

*Heiman v. City of New York*,
   447 N.Y.S.2d 158 (N.Y. App. Div. 1st Dept 1982) .................................................. 7

*Hunt v. Alliance N. Am. Gov't Income Trust*,
    159 F.3d 723 (2d Cir. 1998) .................................................................................. 24

*In re World Trade Center Disaster Site Litigation*,
    456 F. Supp. 2d 520 (S.D.N.Y. 2006) .................................................................. 21

*Jackson v. General Motors Corp.*,
    770 F. Supp. 2d 570 (S.D.N.Y. 2011) .................................................................. 16

*Johnson v. New York City Policy Dept.*,
    651 Fed.Appx. 58 (2d Cir. 2016) .......................................................................... 24

*Kirbaran v. Target Corp.*,
    720 F. Supp. 3d 267 (S.D.N.Y. 2024), *aff'd* No. 24-715, 2025 WL 973050 (2d Cir. Apr. 1,
    2025)......................................................................................................................... 12

*Klein v. Cath. Health. Sys. of Long Island, Inc.*,
    220 N.Y.S.3d 757 (N.Y. App. Div. 2d Dept 2024)................................................ 12

*Lewis v. State*,
    892 N.Y.S.2d 583 (N.Y. App. Div. 3d Dept 2009)................................................ 19

*Lubin v. City of New York*,
    50 N.Y.S.3d 405 (N.Y. App. Div. 2d Dept 2017)................................................. 11

*Matter of Goffredo v. City of New York*,
    830 N.Y.S.2d 11 (N.Y. App. Div. 1st Dept. 2006) ............................................ 8, 9

*Matter of Jaime v. City of New York*,
    237 N.E.3d 796 (N.Y. 2024) .................................................................................. 7

*Matter of New York County DES Litig.*,
    678 N.E.2d 474 (N.Y. 1997) .................................................................................. 8

*Matter of World Trade Ctr. Bombing Litig.*,
    957 N.E.2d 733 (N.Y. 2011) ................................................................................ 14

*McErlean v. City of Long Beach*,
    217 N.Y.S.3d 179 (N.Y. App. Div. 2d Dept 2024)............................................... 25

*McLean v. City of New York*,
    905 N.E.2d 1167 (N.Y. 2009) ........................................................................ 13, 25

*Metz v. State of New York*,
    982 N.E.2d 76 (N.Y. 2012) .................................................................................. 16

*O'Connor v. New York*,
    447 N.E.2d 33 (N.Y. 1983) .................................................................................. 19

*Odermatt v. Way*,
    188 F. Supp. 3d 198 (E.D.N.Y. 2016).................................................................... 5

*Ortiz v. Ciox Health LLC*,
    179 N.E.3d 635 (N.Y. 2021) ................................................................................ 16

*Pelaez v. Seide*,
    810 N.E.2d 393 (N.Y. 2004) ................................................................................ 19

*Piuggi v. Good For You Productions LLC,*
    739 F. Supp. 3d 143 (S.D.N.Y. 2024) ................................................................. 3

*Rennix v. Jackson,*
    59 N.Y.S.3d 57 (N.Y. App. Div. 2d Dept 2017) ................................................ 13

*Republic of Iraq v. ABB AG,*
    768 F.3d 145 (2d Cir. 2014) ................................................................................ 4

*Smullen v. New York,*
    268 N.E.2d 763 (N.Y. 1971) ...................................................................... 19, 20

*Tara N.P. v. Western Suffolk Board of Co-op. Educational Services,*
    71 N.E.3d 950 (N.Y. 2017) ......................................................................... 17, 22

*Taunus Corp. v. City of New York,*
    279 F. Supp. 2d 305 (S.D.N.Y. 2003) .............................................. 17, 20, 22

*Teresta v. City of New York,*
    108 N.E.2d 397 (N.Y. 1952) ................................................................................ 7

*Tishman v. Himmel + Meringoff Props., LLC,*
    198 N.Y.S.3d 540 (Mem) (N.Y. App. Div. 1st Dept 2023) ............................. 19

*Umeh v. New York City Health & Hosps. Corp.,*
    217 N.Y.S.3d 64 (N.Y. App. Div. 1st Dept 2024) .......................................... 24

*Valdez v. City of New York,*
    960 N.E.2d 356 (N.Y. 2011) ............................................................................. 20

*Vallejo-Bayas v. New York City Tr. Auth.,*
    962 N.Y.S.2d 203 (N.Y. App. Div. 2d Dept 2013) ............................................ 7

*Wademan v. Concra,*
    13 F. Supp. 2d 295 (N.D.N.Y. 1998) ............................................................... 16

*Ying Li v. City of New York,*
    246, F. Supp. 3d 578 (E.D.N.Y. 2017) ............................................................ 24

**Statutes**

49 U.S.C. § 40101 ...................................................................................................... 2

New York General Municipal Law § 50 ............................................................... 7, 8

**Other Authorities**

Twenty-First Annual Report of the New York Judicial Conference, 1976, p. 286 ....... 6

**Rules**

Civil Practice Law and Rule 214-c ........................................................................... 7

Federal Rule of Civil Procedure 12 ......................................................................... 3

Federal Rule of Civil Procedure 15 ....................................................................... 19

Federal Rule of Evidence 201 ................................................................................. 14

Defendant City of New York (the "City"), submits this Memorandum of Law in support of its Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (the "Motion").

## I.    PRELIMINARY STATEMENT

The City respectfully requests that the Court dismiss, with prejudice and without leave to replead, the latest iteration (the Third Amended Complaint) of Plaintiff Josephine A. Jules' ("Plaintiff") claims in this action. Plaintiff, a former resident of Lower Manhattan, alleges that she first experienced the symptoms of her "cascade of illnesses" in July 2015. She further alleges that she reported her symptoms to yet another set of doctors at a World Trade Center clinic in December 2022. Nonetheless, she did not file her notice of claim against the City until a year after that—long after the 90-day requirement, which is a condition precedent to maintaining a tort action. Thus, Plaintiff brings this action against the City following service of an untimely notice of claim alleging toxic tort personal injury claims purportedly caused by exposure to dust and other substances following the World Trade Center September 11, 2001 terrorist attacks. The allegations of Plaintiff's Third Amended Complaint establish that Plaintiff's notice of claim was not served within ninety days of her discovery of the manifestations or symptoms of her "cascade of illnesses". Nor does the Third Amended Complaint allege that Plaintiff sought leave to file a late notice of claim within one year and ninety days of such manifestations or symptoms (it is indisputable that she did not). Furthermore, Plaintiff's allegations—claiming a generalized duty on behalf of the City to "protect health" from alleged toxins following an unprecedented terrorist attack—do not (and cannot) identify any cognizable special duty owed by the City to Plaintiff under any of the theories espoused by Plaintiff. Finally, because any attempt to replead

would be futile, any such request should be denied, and Plaintiff's Third Amended Complaint should be dismissed with prejudice.[1]

## II.    **PROCEDURAL HISTORY**

Plaintiff filed her Second Amended Complaint (the "SAC") on July 1, 2025 (ECF No. 9, SAC.) The City moved to dismiss the SAC on October 17, 2025. (ECF. Nos. 24–26.) Following the City's consent to an extension of time, Plaintiff filed her opposition to the City's motion on December 15, 2025 (ECF No. 29.) Four days later, on December 19, 2025, Plaintiff filed a motion for leave to amend and to file a Third Amended Complaint (the "TAC"). (ECF Nos. 30–32.) The City consented to Plaintiff's motion for leave in a letter to the Court, dated December 30, 2025. (ECF No. 33.) On January 2, 2026, Plaintiff filed a motion to stay the City's January 12, 2026, deadline to submit a reply brief on its motion to dismiss the SAC pending the Court's decision on Plaintiff's most recent motion to amend. (ECF Nos. 34–36.) On January 6, 2026, the City submitted a notice of withdrawal of its motion to dismiss the SAC and stated that, in the interest of judicial efficiency, the City would respond to the TAC rather than seek to have its prior motion to dismiss applied to the TAC. (ECF No. 37.) The Court granted Plaintiff's motion to amend and directed the filing of the TAC. (ECF No. 38.) Plaintiff filed the TAC on January 6, 2026 (ECF No. 39), and the City now submits this motion to dismiss the TAC.[2]

---

[1] So that the City's position on this issue is clear, the City disagrees with any allegation that jurisdiction does not lie with this Court pursuant to the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"). (*See* 49 U.S.C. § 40101 note). The prior decision in this litigation by Judge Wood (ECF No. 8) holding that ATSSSA jurisdiction does not apply was entered prior to the service of Plaintiff's Second Amended Complaint (or any prior complaint) upon the City, fails to appreciate the guidance of the United States Court of Appeals for the Second Circuit in *In re WTC Disaster Site,* 414 F.3d 352, 380, and overlooks this Court's "Amended Order Following Appellate Remand, Extending Jurisdiction" filed July 22, 2005 in Master Docket 21 MC 100 (AKH) (indicating the Court "hereby adopt[s] the reasoning in the remand decision and find[s] jurisdiction accordingly").

[2] While very similar to the SAC, the TAC includes rephrased allegations and raises new factual assertions with respect to Plaintiff's alleged interactions with the Federal Emergency Management Agency

### III.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) permits a defendant to move to dismiss a complaint that fails to state a claim upon which relief can be granted. For a complaint to survive a motion to dismiss under FRCP 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Piuggi v. Good For You Productions LLC*, 739 F. Supp. 3d 143, 154 (S.D.N.Y. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining whether a complaint states a claim that is plausible, courts must 'give no effect to assertions of law or to legal conclusions couched as factual allegations, but [must] accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.'" *Id.* (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). And "'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief,' . . . or where a plaintiff has 'not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[.]'" *Durr v. Slator*, 558 F. Supp. 3d 1, 15 (N.D.N.Y. 2021) (quoting *Twombly*, 550 U.S. at 558, 570).

A complaint may fail to present a claim upon which relief can be granted in various ways. As is the case here, a complaint that contains "conclusory assertions of duty" in lieu of the specific identification of a legal duty owed to the plaintiff by the defendant is properly dismissed

---

("FEMA") (*see, e.g.,* ECF No. 39, TAC ¶¶ 142–44). These latest assertions are a transparent attempt to remedy Plaintiff's failure to identify any duty owed to her by the City (as identified in the City's motion to dismiss the SAC (*see* ECF No. 25 at § II(B)). While none of Plaintiff's latest statements in the TAC alter the need for dismissal for the reasons stated in the City's now withdrawn motion to dismiss the SAC, the City brings this motion to dismiss the TAC to squarely address all of Plaintiff's claims and her latest attempt to reframe the facts.

under FRCP 12(b)(6). *See, e.g. Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 326–28 (S.D.N.Y.

2012). A motion to dismiss is also appropriate under FRCP 12(b)(6) where a plaintiff's claims

purport to rely upon a federal statute that does not provide a private right of action. *See Fair v.

Verizon Communications, Inc.*, 621 Fed.Appx. 52, 53 (2d. Cir. 2015) (citing *Republic of Iraq v.

ABB AG*, 768 F.3d 145, 171 (2d Cir. 2014)). Further, "[w]here the dates in a complaint show that

an action is barred by a statute of limitations" a defendant may raise the affirmative defense in a

pre-answer motion to dismiss pursuant to FRCP 12(b)(6). *Cangemi v. United States*, 13 F.4th

115, 134 (2d Cir. 2021) (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.

1989)).

Where a defendant's motion to dismiss has been granted, if "the problem with a

plaintiff's causes of action is substantive, better pleading will not cure it . . . . In such instances,

repleading would be futile, and 'a futile request to replead should be denied.'" *Odermatt v. Way*,

188 F. Supp. 3d 198, 217 (E.D.N.Y. 2016) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d

Cir. 2000).

## IV.    ARGUMENT

### A.  Plaintiff's Notice of Claim is Untimely and This Subsequently Filed Litigation Must be Dismissed.

The notice of claim submitted by Plaintiff is untimely and her subsequently filed

litigation must therefore be dismissed. Taking the facts as asserted in the Third Amended

Complaint as true, Plaintiff alleges numerous maladies forming a "cascade of illnesses" dating

back at least as early as her symptoms, diagnosis, and treatment for left-ventricular non-

compaction cardiomyopathy, allegedly now referred to as Nonischemic Cardiomyopathy

("NICM"), in July 2015. (ECF. No. 39, TAC ¶¶ 36, 70.) Around July 2015, Plaintiff alleges she

was "incessant[ly] complaining about inter alia terrible stabbing pains in her chest and chest

tightness[.]" (ECF No. 39, TAC ¶ 37.) Plaintiff alleges that she continued to receive care and treatment for "her heart muscle diagnosis" in Canada during August 2016 and again in Sweden in September 2019. (ECF No. 39, TAC ¶¶ 38, 40.)

Thereafter, Plaintiff applied, received a "WTC Survivor 911S50656" identification reference, and was admitted into the World Trade Center Health Program (her admission occurred at some point prior to November 4, 2022, when she alleges she saw a physician in that program). (ECF No. 39, TAC ¶ 45; *see also* Notice of Claim ¶ 4 (Attached as Exhibit A to the Declaration of Joseph E. Hopkins, Esq., January 20, 2026, submitted herewith (ECF No. 43-1). Plaintiff's Notice of Claim was incorporated by reference in the TAC (ECF No 39 ¶ 5).) In November 2022, Plaintiff alleged she had a "Pulmonary Function Test at Health + Hospitals WTC Clinic" due to her complaints of "feeling like she was not getting proper air." (ECF No. 39, TAC ¶¶ 45–46.) Plaintiff's alleged symptoms led her to seek additional care from various WTC clinics in December 2022 which resulted in diagnoses of "obstructive airway disease, specifically asthma, and upper respiratory disease, specifically chronic rhinosinusitis[.]" (ECF No. 39, TAC ¶¶ 48–50.) Plaintiff alleges she sought a second opinion regarding these diagnoses and was again diagnosed with "obstructive-airway asthma" after a pulmonary function test on March 7, 2023. (ECF No. 39, TAC ¶¶ 52–54.) Plaintiff further alleges that the symptoms reported to her physicians between July 2015 and March 2023 are part of the "rapidly progressing cascade of illnesses" that she allegedly believes to include a litany of "latent injurious diseases" such as "interstitial lung abnormalities," "restrictive lung disease," "early-interstitial lung disease," "new-onset rheumatologic systemic autoimmune disease," "cerebrovascular accident lacunar infarct consistent with mixed connective tissue disease," "cerebral small vessel disease," "microangiopathic ischemic disease," "lesion extending on each

side of the falx- meningioma," "new-onset cardiac late gadolinium enhancement," "hepatic steatosis-toxicant-associated fatty liver disease," and "bronchiectasis," among others. (ECF No. 39, TAC ¶¶ 70, 97–107.) These alleged "latent injurious diseases" are among the "cascade of injuries" asserted by Plaintiff in her Third Amended Complaint. (ECF No. 39, TAC ¶¶ 151, 170, 179.) And these alleged symptoms all occurred years before she served her notice of claim.

A plaintiff in any tort action, as a condition precedent to suit, must serve a notice of claim upon a New York municipal entity within ninety days after his or her claim arises. New York General Municipal Law ("GML") § 50-e (l) (a); *Matter of Jaime v. City of New York*, 237 N.E.3d 796, 802 (N.Y. 2024). The purpose of this timeliness requirement is to afford a municipal entity "an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available." *Vallejo-Bayas v. New York City Tr. Auth.*, 962 N.Y.S.2d 203, 204 (N.Y. App. Div. 2d Dept 2013) (citing *Teresta v. City of New York*, 108 N.E.2d 397, 398 (N.Y. 1952)). The statute is intended "to protect a public corporation against stale or unwarranted claims and to enable it to investigate claims timely and efficiently." *Heiman v. City of New York*, 447 N.Y.S.2d 158, 159 (N.Y. App. Div. 1st Dept 1982) (quoting Twenty-First Annual Report of the New York Judicial Conference, 1976, p. 286).

Here, Plaintiff's claims cannot be maintained due to her failure to comply with the notice-of-claim requirements of GML § 50-e(1)(a). Plaintiff never served a timely notice of claim and never sought (and would not be entitled to) leave to file a late notice of claim because she did not seek leave before the statute of limitations expired. A court may not extend the time to serve a late notice claim beyond the statute of limitations which, in claims against the City involving injuries purportedly resulting from toxic exposure, is one year and ninety days from the date that the claim arose. GML § 50-e(5); *see also Matter of Goffredo v. City of New York*, 830 N.Y.S.2d

11, 12 (N.Y. App. Div. 1st Dept. 2006). For purposes of GML § 50-e, a "claimed injury result[ing] from exposure to a harmful substance . . . accrues upon discovery of the manifestations or symptoms of the latent disease that the harmful substance produced." *Matter of Goffredo*, 830 N.Y.S.2d at 12 (citing *Matter of New York County DES Litig.*, 678 N.E.2d 474 (N.Y. 1997)); *see also* CPLR 214-c(3).

The petitioner in *Goffredo* worked at the World Trade Center site between September 12, 2001, and June 2002, where he alleged that he was exposed to toxic chemicals that ultimately led to his diagnosis of chronic obstructive pulmonary disease on February 27, 2003. *Matter of Goffredo*, 830 N.Y.S.2d at 12. The petitioner sought leave to serve a late notice of claim on December 23, 2003, which was less than one year and ninety days following the diagnosis of his illness. *Id.* However, "[a]ccording to petitioner's medical records, symptoms related to the condition with which he ultimately diagnosed—chronic obstructive pulmonary disease (COPD)—began to manifest themselves in December 2001." *Id.* In keeping with prior New York decisions which held that actions concerning exposure to harmful substances accrue upon the discovery of the manifestations or symptoms of the latent disease, the *Goffredo* court determined that the petitioner's time to submit his notice of claim accrued upon the manifestation of his symptoms in December 2001, approximately two years prior to his request to serve a late notice of claim. *Id.* Because this accrual date meant that the statute of limitations expired in March 2003, the court denied the petitioner's requested leave. *Id.*

Here, Plaintiff's notice of claim suffers from the same defect, and this litigation that followed therefrom must be dismissed. Plaintiff's notice of claim was submitted on December 13, 2023. But, as set forth above, taking the facts as asserted in the Third Amended Complaint as true, Plaintiff's alleged "cascade of illnesses" dates back at least as early as her symptoms in July

2015. (ECF. No. 39, TAC ¶¶ 36, 70.) Plaintiff's alleged "cascade of illnesses" establishes the untimeliness of Plaintiff's notice of claim against the City (and of the instant litigation). As noted, Plaintiff never sought leave to serve a late notice of claim with respect to her claims but rather elected simply to serve her notice of claim pursuant to GML § 50-e on December 13, 2023. (*See* Plaintiff's Notice of Claim, ECF No. 26-1, Hopkins Decl. Ex. A.)  A late notice of claim served without leave of court is a nullity. *See, e.g., Cassidy v. New York City Tr. Auth.,* 235 N.Y.S.3d 267, 268-69 (N.Y. App. Div. 1st Dept 2025).

The respiratory, cardiac and other symptoms of Plaintiff's alleged "cascade of injuries" manifested and were symptomatic since at least July 2015 and thereafter for years before her service of her notice of claim. (ECF No. 39, TAC ¶ 36.) In fact, Plaintiff's notice of claim specifically references her "[l]ung injuries" and "NICM Heart tissue injury" (both of which are identified in the TAC as allegedly manifesting by at least July 2015 (ECF No. 39, TAC ¶¶ 36–41)) as examples of damages that she sustained due to "exposure to multiple toxicants and hazardous substances from the World Trade Center[.]" (ECF No. 43-1, Exhibit A ¶ 4.)[3] As a result, Plaintiff's 90-day deadline to serve a timely notice of claim pursuant to GML § 50-e passed in October 2015, and the period within which she could have sought leave to serve a late notice of claim under GML § 50-e(5) expired one year later in October 2016. In addition,

---

[3] As stated *supra*, Plaintiff's December 13, 2023 notice of claim is incorporated by reference into the TAC. (*See* ECF. No. 39, TAC ¶ 5.) Further, the City submits Plaintiff's notice of claim as an exhibit herewith because of its duty of candor to the Court. The TAC alleges that Plaintiff's sworn notice of claim states "the nature of the claim, the time and place where injuries were sustained as far as then practicable[,] and the claim for injuries the damages herein set forth and upon which this action is founded[.]" (ECF No. 39, TAC ¶ 5.) Having asserted in her notice of claim that her maladies between July 2015 and October 2023 are attributable to her alleged exposure to toxins arising from the World Trade Center disaster—and thus should be included in the supposed grounds for liability and the calculation of damages sought—Plaintiff cannot now be permitted to employ revisionist history to structure her causes of action to ignore those same maladies in an attempt to circumvent the timing requirements of GML § 50-e.

Plaintiff's enrollment in the World Trade Center Health Program (and her ongoing subsequent care thereunder) beginning at the latest on November 4, 2022, aptly demonstrates the manifestation of symptoms and conditions that are part of her notice of claim (and this litigation) prior to the 90-day period preceding her December 13, 2023 service of her notice of claim. Moreover, while not relevant to the untimeliness of her assertion of her claims, her enrollment also demonstrates her belief that her "cascade of injuries" was the result of her proximity to the World Trade Center disaster site. (ECF No. 39, TAC ¶¶ 45–46.) Under applicable New York law cited above, the earlier onset of symptoms in 2015 is the correct trigger for calculating the accrual of any claim by Plaintiff (as well as calculating the statute of limitations and her deadline to seek any leave to file a late notice).

In any event, if she knew enough to file with the WTC Health Registry, she knew enough to file a notice of claim. Thus, even if the latest possible date of November 4, 2022, is considered as the point at which Plaintiff was aware of her symptoms relating to the conditions complained of in her notice of claim, Plaintiff's deadline to file a timely notice of claim passed at the absolute latest on February 2, 2023, and Plaintiff's deadline to seek leave to file a late notice of claim passed on February 2, 2024.

Plaintiff did not meet either deadline. Therefore, all the causes of action asserted in the Third Amended Complaint are barred because plaintiff failed to satisfy a condition precedent to suing the City as set forth in GML §§ 50-e(1)(a) and 50-i(1). And a New York state court would have no discretion to grant leave to serve a late notice of claim because the statute of limitations has expired. *See* GML § 50-e(5); *Lubin v. City of New York*, 50 N.Y.S.3d 405, 407 (N.Y. App. Div. 2d Dept 2017). And, where the dates alleged in the operative complaint demonstrate that the causes of action are barred by the statute of limitations, as is the case here, dismissal under FRCP

12(b)(6) for failure to state a claim upon which relief can be granted is appropriate. *See Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021) (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)).

### B. Plaintiff's Third Amended Complaint Fails to Allege a Special Duty Owed to Her by the City.

The Third Amended Complaint does not, and cannot, allege a duty owed or breached by the City in relation to Plaintiff's claimed injuries because the allegations of the complaint fall in the heartland of governmental functions and plaintiff failed to plead and cannot establish a special duty. Therefore, Plaintiff's Third Amended Complaint cannot survive a motion to dismiss.

Plaintiff asserts three causes of action: negligence, gross negligence, and fraudulent misrepresentation. (*See* ECF No. 39, TAC ¶¶ 159, 173, 182.) Under New York law, a plaintiff's negligence claim must plausibly plead "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Klein v. Cath. Health. Sys. of Long Island, Inc.*, 220 N.Y.S.3d 757, 762 (N.Y. App. Div. 2d Dept 2024), *see also Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 274 (S.D.N.Y. 2024), *aff'd* No. 24-715, 2025 WL 973050 (2d Cir. Apr. 1, 2025). Furthermore, to demonstrate gross negligence under New York law, a plaintiff must satisfy those three elements of negligence and further establish "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 193 (E.D.N.Y. 2024).

It is well established that "[a]n agency of government is not liable for the negligent performance of a governmental function unless there existed a special duty to the injured person, in contrast to a general duty owed to the public." *Durr*, 558 F. Supp. 3d at 40 (quoting *McLean v. City of New York*, 905 N.E.2d 1167, 1171 (N.Y. 2009)).

> A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.

*Id.* (internal citations omitted). Claims of gross negligence likewise require proof of a special duty when the claims challenge the performance of a governmental function. *See Rennix v. Jackson,* 59 N.Y.S.3d 57, 60 (N.Y. App. Div. 2d Dept 2017). Similarly, "[t]o prevail on a claim of fraud [against the City], plaintiffs must show that there was a special relationship between the parties, that they actually relied on the purported fraudulent statements, and their reliance was reasonable or justifiable[.]" *Downing v. New York City Housing Authority*, 117 N.Y.S.3d 464 (Table), at *5 (N.Y. Sup. Ct. Kings Cnty. July 25, 2019) (holding that, even if the mayor's "statements were fraudulently made, the pleadings did not allege that the City or the Mayor owed a duty to plaintiffs or that plaintiffs reasonably or justifiably relied on such."). Thus, all of Plaintiff's causes of action should be dismissed in the absence of any allegations establishing the threshold requirement of a special duty owed to Plaintiff by the City. *See Ferreira v. City of Binghamton,* 194 N.E.3d 239, 247–48 (N.Y. 2022).

### i. *Plaintiff has not asserted a special duty owed to her by the City.*

Plaintiff's Third Amended Complaint simply makes unsupported assertions of a generalized duty to maintain Plaintiff's health.[4] That allegation undeniably implicates a quintessential governmental function, requiring the plaintiff to plead and establish a special duty

---

[4] In her TAC, Plaintiff has substituted many of the SAC's references to the City's purported duty to "protect public health" with an alleged duty to "protect Plaintiff's health[.]" (*See, e.g.*, ECF No. 39, TAC ¶ 132.) Nonetheless, her pleading remains inadequate and defective; Plaintiff does not assert any basis for the City to have a duty to protect *her* health beyond the simple fact that she is a member of the public at-large. (*See* ECF No. 39, TAC ¶¶ 114, 117–18, 122, 136.) Plaintiff must still meet her initial burden (which she has failed to meet as described herein) of pleading facts that, if true, would demonstrate a special duty owed to her by the City beyond those owed to the general public.

beyond that owed to the public generally. *See id.* at 246 (explaining that a municipality will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public); *see also Matter of World Trade Ctr. Bombing Litig.*, 957 N.E.2d 733 (N.Y. 2011) (provision of security at WTC to protect a broader populace from a terrorist act implicated a governmental program).

      Yet as explained *infra*, Plaintiff's Third Amended Complaint does not plead any facts establishing any special relationship with the City. Thus, Plaintiff's generalized and conclusory allegations of a duty to "maintain Plaintiff's health" in the area of major disaster site are insufficient to allege negligence, gross negligence, or fraudulent misrepresentation against the City. *Ferreira*, 194 N.E.3d at 248 (where there is no special duty "courts will not examine the reasonableness of the municipality's actions").

      The Third Amended Complaint does not plausibly allege any facts showing a special duty between the City and Plaintiff. First, Plaintiff does not allege a violation of statutory duty imposed upon the City and enacted for her benefit as a member of a particular class of persons. Instead, Plaintiff makes generalized reference to a host of federal, state, and local laws— including multiple sections of the Clean Air Act (42 U.S.C. §§ 7401–7671q), the Asbestos National Emissions Standards for Hazardous Air Pollutants (40 C.F.R. Part 61, Subpart M), the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9603), the Emergency Planning and Community Right-to-Know Act (42 U.S.C. 11004), the Resource Conservation and Recovery Act (42 U.S.C. § 6921, et seq.), Article XVII § 3 of the New York Constitution, the New York City Air Pollution Control Code (N.Y.C. Admin. Code §§ 24-141, 24-142, 24-146, 24-602), New York City Charter §§ 556(c)(2), 563) (ECF No. 39, TAC ¶ 136.) However, these allegations fail to identify any class of persons to which Plaintiff belongs which,

under these statutes, would somehow establish a specialized duty owed to her by the City as a member of such a class. Furthermore, the multitude of statutory references alleged in the Third Amended Complaint either do not contain a private right of action at all or contain a limited private right of action applicable only in circumstances that indisputably do not apply to Plaintiff or Plaintiff's claims.[5] *See, e.g., Jackson v. General Motors Corp.*, 770 F. Supp. 2d 570, 574–76 (S.D.N.Y. 2011) (holding that "there is no private right of action for damages under the [Clean Air Act]" and that the language of § 209(a) [of the Clean Air Act] expressly preempts state common law tort actions premised on failure to meet the federal standards promulgated by the EPA pursuant to the CAA."); *Wademan v. Concra*, 13 F. Supp. 2d 295, 300–02, 304–05 (N.D.N.Y. 1998) (holding that neither the Comprehensive Environmental Response, Compensation, and Liability Act, nor the Resource Conservation and Recovery Act, allow a plaintiff to recover medical costs); *see also Ortiz v. Ciox Health LLC*, 179 N.E.3d 635, 638 (N.Y. 2021) (stating that New York statutes that do not include an express provision for a private remedy will only allow for such remedy if the right of action is "fairly implied in the statutory provisions and their legislative history"). As a result, Plaintiff has not plausibly alleged a duty owed to her by the City by way of a statutorily imposed special relationship between the City and Plaintiff. *See Metz v. State of New York,* 982 N.E.2d 76, 77, 79-80 (N.Y. 2012) (explaining that statutes designed to protect public safety do not create a duty to particular individuals).

　　　Nor does Plaintiff's Third Amended Complaint plausibly allege that the City voluntarily assumed a duty to Plaintiff beyond those generally owed to the public. To identify this type of special relationship, a plaintiff must establish

---

[5] Indeed, it is axiomatic that these laws are broadly intended to protect all like situated members of the general public and do not create tort duties running to individuals. *See Metz v. State of New York,* 982 N.E.2d at 80.

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Tara N.P. v. Western Suffolk Board of Co-op. Educational Services*, 71 N.E.3d 950, 954 (N.Y. 2017). The law requires that "all four elements must be present for a special duty to attach." *Id.* at 955. Importantly, with respect to individual injuries allegedly resulting from the World Trade Center terrorist attacks, this Court previously held that the City's assumption and control over the area of Lower Manhattan south of 14th Street (later changed to Canal Street) (the "Frozen Zone")[6] following the attacks did not constitute a special duty on the part of the City to protect property owners and occupants from damage. *Taunus Corp. v. City of New York*, 279 F. Supp. 2d 305, 310–311 (S.D.N.Y. 2003). Plaintiff's allegations of a duty here are more generalized than those rejected by this Court in *Taunus* and therefore should be rejected as insufficient.

Plaintiff makes no cognizable assertion that the City assumed an affirmative special duty on her behalf upon which she reasonably relied. Rather, the Third Amended Complaint merely contains numerous conclusory assertions of duties allegedly generally owed to all residents by the City, including "a duty of care to protect against exposure(s) to toxic environmental contaminants, hazardous substances, and environmental toxicants, including, toxic dust and fumes, mitigate risks associated with toxic exposure(s), and warn of the exposure(s) and risks and air-quality hazards." (ECF No. 39, TAC ¶ 148.) These allegations do not identify any promise or action by the City to assume a special duty on behalf of Plaintiff (or on behalf of any specific class to which she could purport to belong). *See, e.g., Geltzer v City of New York*, 234

---

[6] *See* 9/11 MEMORIAL & MUSEUM, *Frozen Zone map*, https://timeline.911memorial.org/timeline/10686/images/69/228 (last visited October 15, 2025). Per Federal Rule of Evidence 201(c)(2), the City requests that the Court take judicial notice of the information set forth by this website.

N.Y.S.3d 104 (N.Y. App. Div. 2d Dept 2025) (complaint dismissed where a teacher, who was attacked by a student, failed to allege, as required, facts supporting a special duty); *Boland v. City of New York,* 177 N.Y.S.3d 596 (N.Y. App. Div. 2d Dept 2022) (action dismissed because plaintiff failed to allege facts showing that EMTs, who provided him with prehospital care, assumed a duty beyond what was owed to the public generally).

Finally, the Third Amended Complaint does not contain allegations establishing the City's "positive direction and control in the face of a known, blatant and dangerous safety violation." *Durr*, 558 F. Supp. 3d at 40. Rather than identify a special duty arising from positive direction and control, Plaintiff asserts that the City failed to abide by its general duties concerning public health (which Plaintiff has not differentiated from general duties owed to *all* residents of the City) in the aftermath of the World Trade Center terrorist attacks. (ECF No. 39, TAC ¶¶ 135–36.)  Such allegations of failure to perform a general governmental protective service cannot give rise to a special duty on a theory of assuming positive direction and control. *See O'Connor v. New York*, 447 N.E.2d 33, 35-36 (N.Y. 1983) (City inspector's failure to perceive the risk of a gas explosion could not give rise to a special duty under a theory of positive direction and control where there was no direct personal supervision or control over the injured plaintiff); *Smullen v. New York*, 268 N.E.2d 763, 765 (N.Y. 1971) (holding that there can be no municipal liability for failure to perform a general protective governmental function and that an inspector's failure to ascertain a violation cannot confer liability); *Tishman v. Himmel + Meringoff Props.*, LLC, 198 N.Y.S.3d 540 (Mem) (N.Y. App. Div. 1st Dept 2023) (City's reduction of the class of a building code violation did not show that the City assumed direction and control).

Moreover, "the issuance of health advisories does not equate with assuming positive direction and control in the face of a known, blatant and dangerous safety violation." *Lewis v. State*, 892 N.Y.S.2d 583, 585 (N.Y. App. Div. 3d Dept 2009); *see also Pelaez v. Seide*, 810 N.E.2d 393, 403 (N.Y. 2004) (finding that the government's advisory actions regarding proper health and hygiene following lead-based paint exposure did not indicate the assumption of positive direction or control). Here, the Third Amended Complaint alleges that Plaintiff's injuries are the result of her reliance "on the City's false assurances and reassurances" made to the general public regarding the level of risk to health caused by the air quality in the aftermath of the World Trade Center terrorist attacks. (ECF No. 39, TAC ¶ 147.) Even if such allegations are taken as true, the City's advisory actions to the public at large do not indicate the assumption of positive direction and control under New York law. *See Valdez v. City of New York,* 960 N.E.2d 356, 361 (N.Y. 2011) ("under the public duty rule, although a municipality owes a general duty to the public at large to furnish police protection, this does not create a duty of care running to a specific individual sufficient to support a negligence claim, unless the facts demonstrate that a special duty was created"); *Smullen,* 268 N.E.2d at 765 (there can be no municipal liability for failure to perform a general protective governmental function). Furthermore, any alleged control asserted by the City in the aftermath of the World Trade Center terrorist attacks that may have impacted Plaintiff is akin to the control that was asserted over the Frozen Zone and, as noted, this Court has found that no special duty was extended to individuals such as Plaintiff through the exercise of such control. *See Taunus Corp.*, 279 F. Supp. 2d at 310–311.

> ii. *Plaintiff's allegations concerning the purported acts of an alleged federal agent cannot establish a special duty owed to her by the City as a matter of law.*

Plaintiff's contention that the City bears a specialized duty as a result of her reliance on "personalized assurances" from a federal representative is entirely without merit. Having failed

to assert any special duty arising from the City's own actions (*see supra* at III(B)(i)), the TAC attempts to portray new "facts" involving an alleged conversation with a "representative [who] identified himself to Plaintiff as FEMA and acting in coordination with the City's post-9/11 environmental health and safety response[.]" (ECF No. 39 ¶ 143.) According to the TAC, the FEMA representative stated that "there was no dust present, issued assurances of air safety that the air was safe to breathe and assured her that it was safe for her to continue living there (in the exposure zone), and provided her with a small HEPA air machine the size of a radio." (ECF No. 39, TAC ¶ 144.) Plaintiff then takes an inferential leap to state that "[t]hese personalized assurances were negligent and contributed to the City's breach of its duty of care to Plaintiff." (ECF No. 39, TAC ¶ 146.)

FEMA's alleged involvement with Plaintiff does not establish a special duty owed by the City to Plaintiff, nor does the TAC assert any basis to somehow impute FEMA's alleged actions or statements onto the City. As has been well documented, the rescue, recovery and debris removal efforts in the aftermath of the World Trade Center attacks included an unprecedented cooperation of the local, state, and federal governments. This cooperation was made possible by a declared National State of Emergency, which ultimately "allowed for implementation of the course of federal assistance provided pursuant to the framework outlined in the Federal Response Plan ('FRP')." *In re World Trade Center Disaster Site Litigation*, 456 F. Supp. 2d 520, 533 (S.D.N.Y. 2006). The FRP "coordinate[d] the structure and nature of federal assistance by grouping the types of federal assistance most likely to be utilized by overwhelmed state and local governments into twelve separate Emergency Support Functions ('ESFs')." *Id.* at 534. And "[a]s the lead agency in charge of coordinating any federal response pursuant to a declaration of emergency, FEMA [was] authorized to activate some or all of the ESFs, as necessary." *Id.*

(internal quotations omitted). However, no part of this cooperative effort was intended, designed, or resulted in shifting potential liabilities from one cooperating governmental actor to another or negating the separation of each governmental entity and its respective areas of responsibility and potential liability.

The TAC contains no allegations regarding any connection between an alleged FEMA representative's purported actions and the creation of any special duty voluntarily undertaken by the City. As explained *supra*, a special duty requires a special relationship between the City and the Plaintiff beyond the relationships held between the City and the general public. *See Tara N.P.*, 71 N.E.3d at 954. Here, the TAC makes no allegations (because none are possible) linking *FEMA's* purported contact with Plaintiff to: (1) an assumption *by the City* of an affirmative duty to act on Plaintiff's behalf; (2) knowledge *by the City* that inaction could lead to harm; (3) any direct contact *between the City's agents* and Plaintiff; or (4) Plaintiff's justifiable reliance on *the City's affirmative undertaking. See id.* (emphasis added). Further, Plaintiff's alleged contact with FEMA (a federal agency not subject to the City's authority)—which occurred at her residence inside the Frozen Zone—cannot somehow create a special duty on behalf of the City where the City's own direct contacts with property owners and occupants within the Frozen Zone has previously been held to not constitute a special duty. *See Taunus Corp.*, 279 F. Supp. 2d at 310–11.

Because the Third Amended Complaint does not and cannot establish a special duty owed by the City to Plaintiff by way of any statutory duty, voluntary assumption of duty that induced reliance, or assumption of positive direction and control in the face of a known, blatant and dangerous safety violation, Plaintiff cannot maintain her causes of action. Therefore, and for the reasons set forth herein *infra*, the Third Amended Complaint fails to assert plausible causes of

action sounding in negligence, gross negligence, or fraudulent misrepresentation to the public and should be dismissed. *Cf. Applewhite v. Accuhealth, Inc.*, 995 N.E.2d 131, 135 (N.Y. 2013) (it is the plaintiff's obligation to allege and prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself).

### C. The Third Amended Complaint Should Be Dismissed With Prejudice as Repleading Would Be Futile.

Because each of Plaintiff's deficiencies identified by the City's Motion are substantive in nature, Plaintiff should not be permitted to replead her causes of action. Under FRCP 15(a), where a plaintiff has already amended the pleading once, that party "may amend its pleading only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." FRCP 15(a)(1)–(2). Here, Plaintiff filed an amended complaint on January 10, 2025 (ECF No. 6) (prior to the service of any complaint upon the City), a Second Amended Complaint on July 1, 2025 (ECF No. 9) (following a court order dismissing her complaint but providing leave to replead (ECF No. 8)), and a Third Amended Complaint (ECF No. 39) (following the City's motion to dismiss the Second Amended Complaint (ECF Nos. 24–26). It is axiomatic that, where the problems with the causes of action asserted are substantive, and even a liberal reading of the same does not suggest that the plaintiff has a claim that suffers merely from inadequate or inartful pleading, repleading would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying a pro se plaintiff request for leave to replead as futile where the issues with the dismissed causes of action were substantive). And "[s]uch a futile request to replead should be denied." *Id.* (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)).

Here, Plaintiff's causes of action contain fatal, substantive defects. First, Plaintiff's failure to adhere to the 90-day period for serving a notice of claim under GML § 50-e, as

demonstrated by the dates alleged in the Third Amended Complaint, demonstrates a substantive defect that cannot be cured through repleading. *See Umeh v. New York City Health & Hosps. Corp.,* 217 N.Y.S.3d 64, 65 (N.Y. App. Div. 1st Dept 2024) (compliance with the notice of claim requirement is part of plaintiff's substantive cause of action and plaintiff was required to plead compliance). "An amendment to a pleading is considered futile if the claim is time-barred due to the expiration of the applicable statute of limitations period." *Ying Li v. City of New York*, 246, F. Supp. 3d 578, 646 (E.D.N.Y. 2017) (citing *Johnson v. New York City Policy Dept.*, 651 Fed.Appx. 58 (2d Cir. 2016) (summary order)). Because Plaintiff's 90-day statutory period during which she was required to serve a notice of claim began to accrue at the manifestation of her symptoms—which occurred, as alleged in Plaintiff's Third Amended Complaint, by July 2015 (or at the latest by November 2022)—the service of her notice of claim on December 13, 2023, was untimely and the time to seek leave to serve a late notice of claim, which is commensurate with the statute of limitations, has passed. *See* GML § 50-e (5); *see also McErlean v. City of Long Beach,* 217 N.Y.S.3d 179, 180 (N.Y. App. Div. 2d Dept 2024) (late service of a notice of claim, without leave of court, is a nullity). Thus, Plaintiff's claims are time-barred, rendering any attempt to replead futile.

And second, given prior holdings of this Court, Plaintiff fails to and cannot allege facts sufficient to establish a duty owed to her by the City as required by the elements of her causes of action. As demonstrated *supra*, these substantive defects are caused not by Plaintiff's inartful pleading, but rather by the nonexistence of any special duty owed by the City as required in claims against a governmental entity under New York law. *Durr*, 558 F. Supp. 3d at 40 (citing *McLean*, 905 N.E.2d at 1171 (N.Y. 2009)). Because no such duty exists, repleading the causes of action asserted in the Third Amended Complaint would be futile.

V.    **<u>CONCLUSION</u>**

For the foregoing reasons, the City respectfully requests that the Court grant its FRCP

12(b)(6) Motion to Dismiss and dismiss this case with prejudice.

Respectfully submitted,

Dated: January 20, 2026                     /s/ *Joseph E. Hopkins*
                                            Joseph E. Hopkins (Bar No. JH1078)
                                            PELLIS LAW GROUP, LLP
                                            37 North Broadway, Suite 1
                                            Nyack, NY 10960
                                            jhopkins@pellislaw.com

                                            *Attorneys for Defendant, The City of New York*

## **WORD COUNT CERTIFICATION**

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing memorandum of law was prepared on a computer using Microsoft Word. *Word Count*. The total number of words in this memorandum of law, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, signature block, and this Statement is 7,096.

/s/ *Joseph E. Hopkins*
Joseph E. Hopkins

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Docket Entry 3, Plaintiff consents to electronic service.  Therefore, I hereby certify that I have caused a true and correct copy of the foregoing document to be served electronically via ECF this 20th day of January, 2026, to Plaintiff.

I hereby further certify that I have served the unreported authorities cited within the foregoing document as required by Local Rule 7.2 upon Plaintiff via electronic mail.

<u>/s/ *Joseph E. Hopkins*</u>
Joseph E. Hopkins