**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPHINE M. JULES, | |
| Plaintiff, | Master Docket No. 21 MC 100 (AKH) |
| v. | Case No. 1:24-CV-10056-AKH |
| THE CITY OF NEW YORK, | |
| Defendant. | |

**DEFENDANT CITY OF NEW YORK'S REPLY MEMORANDUM OF**
**LAW IN SUPPORT OF FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT.................................................................................... 1

II.  SUMMARY OF RELEVANT LEGAL STANDARDS............................................. 1

III. ARGUMENT .............................................................................................................. 2

    A.  The Facts as Pleaded in the TAC Demonstrate the Untimeliness of Plaintiff's Notice of Claim and Subsequent Litigation..................................................................... 2

    B.  The TAC Cannot Allege a Special Duty Owed to Plaintiff by the City Based on her Purported Contact with an Agent of FEMA. .................................................... 5

    C.  The TAC Should be Dismissed with Prejudice Because Further Pleading by Plaintiff Would be Futile.......................................................................................... 7

        i.   The City's Argument Concerning Futility is with Respect to post-TAC Pleading........ 7

        ii.  Plaintiff's Improper Spoliation Claim has no Bearing on the Futility of Further Repleading in this Litigation.................................................................. 8

IV.  CONCLUSION.......................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alston v. Bendheim*,
    672 F. Supp. 2d 378 (S.D.N.Y. 2009)................................................................................ 2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 2

*Blake v. City of New York*,
    41 N.Y.S.3d 755 (N.Y. App. Div. 2d Dept 2016)........................................................... 9

*Chepilko v. Henry*,
    722 F. Supp. 3d 329 (S.D.N.Y. 2024)............................................................................ 11

*Chukwueze v. NYCERS*,
    891 F. Supp. 2d 443 (S.D.N.Y. 2012)............................................................................. 2

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000)............................................................................................... 8

*Durr v. Slator*,
    558 F. Supp. 3d 1 (N.D.N.Y. 2021) ................................................................................ 9

*Hoffer v. Tellone*,
    128 F.4th 433 (2d Cir. 2025)......................................................................................... 11

*In re Citigroup Auction Rate Securities Litigation*,
    700 F. Supp. 2d 294 n.4 (S.D.N.Y. 2009)..................................................................... 10

*In re World Trade Ctr. Disaster Site Litig.*,
    456 F. Supp. 2d 520 (S.D.N.Y. 2006)............................................................................. 7

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    758 F.3d 202 (2d Cir 2014)............................................................................................. 6

*Joyner v. Greiner*,
    195 F. Supp. 2d 500 (S.D.N.Y. 2002)............................................................................. 3

*Matter of Goffredo*,
    830 N.Y.S.2d 11 (N.Y. App. Div. 1st Dept. 2006)......................................................... 3

*Matter of New York County DES Litig.*,
    678 N.E.2d 474 (N.Y. 1997) ........................................................................................... 3

*Montgomery v. Holland*,
    408 F. Supp. 3d 353 (S.D.N.Y. 2019)............................................................................. 2

*Piuggi v. Good For You Productions LLC*,
    739 F. Supp. 3d 143 (S.D.N.Y. 2024)............................................................................. 2

*Rouviere v. Howmedica Osteonics Corp.*,
    645 F. Supp. 3d 157 (S.D.N.Y. 2022)............................................................................. 4

*Sharma v D'Silva,*
    157 F. Supp. 3d 293 (S.D.N.Y. 2016) ........................................................................ 3

*Tara N.P. v. Western Suffolk Board of Co-op. Educational Services,*
    71 N.E.3d 950 (N.Y. 2017) ....................................................................................... 7

*Taunus Corp. v. City of New York,*
    279 F. Supp. 2d 305 (S.D.N.Y. 2003) ....................................................................... 8

*Umeh v. New York City Health & Hosps. Corp.,*
    217 N.Y.S.3d 64 (N.Y. App. Div. 1st Dept 2024) ...................................................... 9

*Whitney v. Quaker Chemical Corp.,*
    683 N.E.2d 768 (N.Y. 1997) ..................................................................................... 4

*Ying Li v. City of New York,*
    246 F. Supp. 3d 578 (E.D.N.Y. 2017) ....................................................................... 9

**Statutes**

New York General Municipal Law § 50 ........................................................................ 3

**Rules**

Civil Practice Law and Rule 214-c ............................................................................... 3

Federal Rule of Civil Procedure 12 .............................................................................. 1

Federal Rule of Civil Procedure 37 ............................................................................. 11

Defendant City of New York (the "City"), submits this Reply Memorandum of Law ("Reply") in support of its Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss ("Motion").

## I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff's arguments in her Opposition ("Opposition") are insufficient, and the City's Motion should be granted with prejudice. The City seeks the dismissal of Plaintiff's Third Amended Complaint ("TAC") on two grounds. First, Plaintiff's notice of claim was untimely served long after she discovered the symptoms of the latent disease(s) that form the bases of her causes of action. Based on her own allegations, the notice of claim should have been served by June 2023 at the absolute latest, if not upon her initial discovery of symptoms in July 2015. Plaintiff's attempt to recast her pre-October 2023 symptoms as unrelated to her present maladies is contradicted by the TAC and her notice of claim. Further, Plaintiff's obligation to serve a notice of claim is not affected by any alleged "misdiagnoses" and was triggered by her discovery of her symptoms. Second, the TAC does not, and cannot on the alleged facts, establish a special duty owed by the City. Plaintiff's conclusory misstatements of the relationships between federal agencies and the City during the WTC emergency response do not somehow salvage the TAC's failure to establish a special duty. Finally, Plaintiff misapprehends the City's futility argument; it is not that the TAC itself is a futile pleading but rather that the Motion should be granted and that any future attempt to replead would be futile.

## II.    <u>SUMMARY OF RELEVANT LEGAL STANDARDS</u>

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). *Piuggi v. Good For You Productions LLC*, 739 F. Supp.

3d 143, 154 (S.D.N.Y. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "[a]lthough all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *Montgomery v. Holland*, 408 F. Supp. 3d 353, 361 (S.D.N.Y. 2019) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff seeks to extrapolate the "liberal review" afforded to pro se plaintiffs beyond its allowable scope. In reality, "[n]otwithstanding the Court's obligation [to construe a pro se complaint liberally], to survive a motion to dismiss, a pro se plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 450 (S.D.N.Y. 2012) (internal quotation omitted). Further, even though "the allegations of a pro se complaint are reviewed under less stringent standards than pleadings drafted by counsel, the 'duty to liberally construe plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Alston v. Bendheim*, 672 F. Supp. 2d 378, 383 (S.D.N.Y. 2009) (quoting *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002)); *see also Sharma v D'Silva*, 157 F. Supp. 3d 293, 300 (S.D.N.Y. 2016). The TAC pleads untimely causes of action that are devoid of their required elements and thus the TAC does not state any claim plausible on its face.

## III.   **ARGUMENT**

### A.   **The Facts as Pleaded in the TAC Demonstrate the Untimeliness of Plaintiff's Notice of Claim and Subsequent Litigation.**

A claimant must serve a timely notice of claim prior to initiating litigation against the City. New York General Municipal Law ("GML") § 50-e(1)(a) requires that any tort claim brought against the City must be preceded by a notice of claim served within ninety (90) days after the claim arises. For purposes of GML § 50-e, a "claimed injury result[ing] from exposure

to a harmful substance . . . accrues upon discovery of the manifestations or symptoms of the latent disease that the harmful substance produced." *Matter of Goffredo*, 830 N.Y.S.2d 11, 12 (N.Y. App. Div. 1st Dept. 2006) (citing *Matter of New York County DES Litig.*, 678 N.E.2d 474 (N.Y. 1997)); *see also* CPLR 214-c(3). "[I]t is irrelevant that the plaintiff has no reason to believe that her injury has a nonnatural cause—it is sufficient that the Plaintiff have simply discovered the injury underlying [her] claim . . . ." *Rouviere v. Howmedica Osteonics Corp.*, 645 F. Supp. 3d 157, 173 (S.D.N.Y. 2022). A doctor's misdiagnosis does not toll this time. *Id.* A plaintiff's efforts to later recast her symptoms to avoid dismissal will not be countenanced. *Id.* at 174; *see also Whitney v. Quaker Chemical Corp.*, 683 N.E.2d 768, 769 (N.Y. 1997).

Plaintiff's notice of claim is dated December 13, 2023, but her own allegations demonstrate she discovered her alleged injuries more than 90 days earlier. The TAC alleges that Plaintiff experienced a "cascade of illnesses" beginning as early as July 2015. (ECF. No. 39, TAC ¶¶ 36, 37, 70.) Plaintiff received treatment for heart issues (originally called left-ventricular non-compaction cardiomyopathy ("LVNC") and allegedly now called Nonischemic Cardiomyopathy ("NICM")) in Canada during July 2015 and August 2016 and again in Sweden in September 2019. (ECF No. 39, TAC ¶¶ 36–40.) Plaintiff's notice of claim alleges that her claim against the City is the result of her "exposure to multiple toxicants and hazardous substances from the World Trade Center[,]" which led to damages including "[l]ung injuries" and "NICM Heart tissue injury[.]" (ECF No. 43-1, Exhibit A ¶ 4.) The TAC alleges that Plaintiff's notice of claim states "the nature of the claim, the time and place where injuries were sustained as far as then practicable[,] and the claim for injuries the damages herein set forth and upon which this action is founded[.]" (ECF No. 39, TAC ¶ 5.) Thus, by its own clear language, the TAC alleges that Plaintiff experienced lung injuries and a NICM heart tissue injury (among other

3

alleged injuries) far earlier than 90 days prior to her notice of claim. (*See, e.g.* ECF. No. 39, TAC ¶¶ 36–41.)

Plaintiff's Opposition seeks to parse the injuries claimed in the TAC to exclude those for which she identified symptoms prior to October 2023. But Plaintiff asserted in her notice of claim that her lung injuries and NICM are attributable to her alleged exposure to 9/11 toxins and thus, she argued, they should be included in the supposed grounds for liability and her damages. Plaintiff cannot now circumvent the timing requirements of GML § 50-e by ignoring or disavowing her allegations.

Plaintiff makes the self-serving argument (for the first time) that the TAC's references to NICM symptoms and diagnoses which occurred prior to October 2023 are different from the NICM symptoms and diagnoses that are part of the injuries she claims as related to her alleged exposure to World Trade Center "toxins" in her notice of claim and the TAC. (*See* ECF No. 57 at 7–10.) This distinction exists neither in the notice of claim nor the TAC but has materialized now only in response to the City's Motion. In any event, the character of Plaintiff's alleged illness(es) is irrelevant regarding their untimely nature—it is undeniable that Plaintiff experienced the symptoms of her claimed "cascade of illnesses" beginning in 2015 and that her alleged "heart injuries" are part of her notice of claim and TAC allegations.

Finally, Plaintiff implausibly argues that her characterization of her injuries as "latent" in the notice of claim defeats the City's argument that such injuries existed as early as July 2015. (ECF No. 57 at 12.) This argument is without merit – a disease allegedly deriving from exposure to alleged 9/11 toxins is not less "latent" if discovered in July 2015 instead of October 2023.

Even ignoring the symptoms and manifestations that Plaintiff experienced between 2015 and 2019, her pleadings and Opposition admit that she experienced symptoms allegedly related

4

to WTC-caused injuries in at least November 2022 and throughout early 2023, well before the

90-day limit. The TAC states that Plaintiff was admitted into the World Trade Center Health

Program[1] at some point prior to November 4, 2022. (ECF No. 39, TAC ¶ 45.) Plaintiff alleges

she sought care through that program in November and December 2022, receiving various lung

tests and diagnoses. (ECF No. 39, TAC ¶¶ 45–46, 48–50, 52–54.) As noted above, Plaintiff's

arguments now that there were misdiagnoses or that her symptoms have evolved or worsened is

of no moment to the analysis of the timeliness of her notice of claim. Applying well-established

New York legal standards, Plaintiff's claim arose at the latest by March 2023. By Plaintiff's own

admission, her notice of claim thus needed to be served no later than June 2023, rendering her

December 2023 notice of claim untimely.

### B.      The TAC Cannot Allege a Special Duty Owed to Plaintiff by the City Based on her Purported Contact with an Agent of FEMA.

The allegations in the TAC do not establish any special duty owed to Plaintiff by the

City. The Opposition restates factual allegations in the TAC and argues that the Court must come

to the same *legal conclusions* as those Plaintiff has drawn—that her alleged contact with FEMA

formed a special duty owed to Plaintiff by the City—simply because *factual* inferences are to be

drawn in her favor on a motion to dismiss. (ECF No. 57 at 14–15.) Plaintiff is incorrect and she

misstates the applicable legal standard. *See* Section II *supra*. The existence of a special duty

owed to an individual beyond that which is generally owed to the public requires:

---

[1] Plaintiff argues that "[e]nrollment in a medical monitoring program does not constitute discovery of a latent disease." (ECF No. 57 at 12.) Plaintiff misses the mark. First, Plaintiff cites to *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202 (2d Cir 2014), which is wholly irrelevant here— neither Plaintiff nor the City have argued that a "medical monitoring" independent cause of action has been raised. In fact, *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.* supports the City's position that it is the manifestations of symptoms that determines when a claim accrues under New York law. *See id.* at 211. Second, Plaintiff misconstrues the City's argument regarding her enrollment in the World Trade Center Health Program. Plaintiff's complaints of symptoms while at those clinics, not the enrollment in and of itself, reflect her awareness of her symptoms of her alleged latent disease(s). (ECF No. 39, TAC ¶¶ 45–46, 48–50, 52–54.)

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Tara N.P. v. Western Suffolk Board of Co-op. Educational Services*, 71 N.E.3d 950, 954 (N.Y. 2017) (requiring that "all four elements must be present for a special duty to attach." *Id.* at 955.).

The TAC does not plead facts necessary to establish the existence of a special duty. The Opposition focuses on the first and third elements, and Plaintiff argues that these elements are met by her allegations concerning her contact with FEMA personnel at her apartment. (ECF No. 39, TAC ¶¶ 142–47.) However, these allegations, even if taken as a true *factual account,* do not support the *legal conclusion* that a duty was assumed or owed by the City, or that the FEMA federal employee was somehow an agent of the City. The authorities cited by Plaintiff do not support her legal conclusions either. The court's description in *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d 520 (S.D.N.Y. 2006) of the cooperative efforts between the City and FEMA does not support Plaintiff's supposed hierarchy of authority or corroborate Plaintiff's assumption of duty argument. Rather, the court discussed FEMA's role "as the lead federal agency for coordinating an appropriate federal response" pursuant to the Federal Response Plan. *Id.* at 533. The involvement of a federal agency was limited to areas within that agency's authority, and there is no indication that this federal authority was subservient to or beneath that of the City. *Id.* at 534. None of the authorities[2] cited by Plaintiff support the legal conclusion that

---

[2] Plaintiff's reference to various Congressional hearings is of no moment as those hearings constitute neither facts supporting Plaintiff's arguments nor applicable legal authority. (ECF No. 57 at 15–18.) *Compare* ECF No. 57 at 15–18, *and Air Quality in New York City After the September 11, 2001 Attacks: Field Hearing Before the Subcomm. On Clean Air, Wetlands, and Climate Change of the Comm. On Enviro. and Pub. Works*, 170th Cong. S. Hrg. 107-524 (2002), *with In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 533–34.

6

FEMA (acting collaboratively within the Federal Response Plan) was somehow acting as an agent of the City such that any interactions with individual citizens could be imputed to the City.[3] Any facts alleged in the TAC concerning Plaintiff's interactions with FEMA are inconsequential as to whether the TAC establishes the existence of a special duty (and it does not). Simply put, direct contact with FEMA is not direct contact with the City. As a result, the TAC does not sufficiently plead causes of action for negligence, gross negligence, or fraudulent misrepresentation and should be dismissed with prejudice.

    **C.**    **The TAC Should be Dismissed with Prejudice Because Further Pleading by Plaintiff Would be Futile.**

       *i.*  *The City's Argument Concerning Futility is with Respect to post-TAC Pleading.*

Granting the City's Motion because the TAC is either untimely or fails to allege a duty owed by the City to Plaintiff renders any further pleadings by Plaintiff futile. Where the problems with a plaintiff's causes of action are substantive, "better pleading will not cure it . . . [and] [r]epleading would thus be futile. Such a futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Contrary to Plaintiff's characterization, the Motion does not state that the TAC itself is a futile pleading. Rather, the Motion (and this Reply) demonstrates that, because the TAC's failures are substantive in nature, no further repleading should be granted. *See Umeh v. New York City Health & Hosps. Corp.,* 217 N.Y.S.3d 64, 65 (N.Y. App. Div. 1st Dept 2024); *see also Ying Li v. City of New York*, 246, F. Supp. 3d 578, 646 (E.D.N.Y. 2017); *Durr v. Slator*, 558 F. Supp. 3d 1, 40 (N.D.N.Y. 2021).

Contending that the City's "futility argument" should not apply, Plaintiff repeats her

---

[3] This Court previously held that the City's assumption and control over the "Frozen Zone" following the 9/11 attacks did not constitute a special duty on the part of the City to protect property owners and occupants from damage. *Taunus Corp. v. City of New York*, 279 F. Supp. 2d 305, 310–311 (S.D.N.Y. 2003).

arguments concerning the timeliness and sufficiency of the TAC while noting that the governing substantive law is New York law and that an earlier dismissal in this litigation was jurisdictional, not substantive. (*See* ECF No. 57 at III(C).) The City does not dispute that New York substantive law applies nor that the dismissal of the First Amended Complaint [ECF. No. 8] was predicated on a lack of subject matter jurisdiction.[4] The remainder of Plaintiff's futility argument relates to allegations made in the TAC and thus is of no moment to the Motion, which asserts that repleading is futile should the Court rule that the TAC fails in timeliness or sufficiency. *See Blake v. City of New York*, 41 N.Y.S.3d 755 (N.Y. App. Div. 2d Dept 2016) (precluding further pleading where facts alleged in earlier complaint did not state a cause of action).

> ii.  *Plaintiff's Improper Spoliation Claim has no Bearing on the Futility of Further Repleading in this Litigation.*

In her Opposition, Plaintiff contends that the record of her GML § 50-h examination has been spoliated, entitling Plaintiff to an adverse inference against the City that purportedly missing testimony would relate to "LVNC's genetic nature" and would "defeat[] the City's accrual [futility] argument on its own terms." (ECF No. 57 at 27–28.) Plaintiff asserts that an adverse inference against the City is proper because "[t]he City assumed on-the-record custody and control of the GML § 50-H deposition recording" because counsel for the City offered to coordinate delivery of the video and transcript from the stenographer to Plaintiff. (ECF No. 57 at 28.)

Plaintiff's spoliation argument fails for multiple reasons. First, the Motion asserts that the TAC fails to state a claim due to the TAC's failure to bring a timely claim or to adequately assert a duty owed to Plaintiff by the City. (ECF No. 42 at III(A)–(B).) The adverse inference sought

---

[4] The City, however, does dispute Plaintiff's characterization of the procedural history in this litigation and the effect of the same on the futility of further repleading.

by Plaintiff is improper at this juncture because it would require the Court to weigh evidence beyond the scope of the Motion. *See In re Citigroup Auction Rate Securities Litigation*, 700 F. Supp. 2d 294, 304 n.4 (S.D.N.Y. 2009) ("At this stage in the proceedings, the Court is assessing the sufficiency of Plaintiff's pleading and is not engaged in weighing evidence.")

Moreover, Plaintiff has failed to assert her spoliation claim under the applicable federal rule. In her Opposition, Plaintiff cites to *Residential Funding Corp. v. DeGeorge Financial Corp.* to argue that spoliation is established where "the City controlled the evidence, knew edits were made, and is pressing a litigation argument that depends on the absence of the missing testimony." (ECF No. 57 at 28 (citing *Residential Funding*, 306 F.3d 99, 107 (2d Cir. 2002).) However, Fed. R. Civ. P. 37, the basis of the reasoning in *Residential Funding*, was amended in 2015 with respect to the retention and spoliation of electronically stored information ("ESI"). *See Hoffer v. Tellone*, 128 F.4th 433, 437–38 (2d Cir. 2025); *see also Chepilko v. Henry*, 722 F. Supp. 3d 329 (S.D.N.Y. 2024). Whether a Court may impose an adverse inference against a party for spoliation of ESI is governed by Fed. R. Civ. P. 37(e)(2) which, following the 2015 amendment, "requires a finding of intent to deprive another party of the information's use in the litigation." *Hoffer*, 128 F.4th at 438 (internal quotation omitted).

Applying the analysis set out in *Hoffer*, Plaintiff fails to prove any of the elements necessary to permit an adverse inference against the City. Plaintiff cites no relevant authority to support her conclusory allegation that counsel's generous and collegial offer to coordinate the transmission of the GML § 50-h record from the stenographer to Plaintiff put the GML § 50-h record under the "control" of the City. (*See* ECF No. 59.) In fact, neither the City nor its counsel had care, custody, or control over the transcripts or video recordings of Plaintiff's GML § 50-h examination or the exhibits therefrom, except to transmit physical and digital versions of them to

9

Plaintiff, per her request. (ECF No. 59 ¶¶ 4–7, 13.) The City's counsel, after receiving an email from Plaintiff alleging "audio-visual inconsistencies[,]" provided Plaintiff with the contact information for the court reporting service to contact them directly. (ECF No. 59 ¶¶ 8, 10–11.) As explained to her, copies of the transcript and video recording were provided to Plaintiff by the City to save Plaintiff the expense (over $14,000) of ordering the transcript and video recording herself. (ECF No. 59 ¶¶ 10–12.) Plaintiff fails to establish any fact to demonstrate that any claimed "irregularities" exist, are the result of an intentional loss or destruction of evidence by the City, or that the City acted with an intent to deprive Plaintiff of the use of some or all of the record in litigation. Finally, in any event, the GML § 50-h record is not relevant to whether the TAC asserts a timely claim or pleads adequate facts to establish a legal duty owed by the City, such that any "destruction" of the record (or portion thereof) is immaterial.[5]

## IV.    **CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court grant its Fed. R. Civ. P. 12(b)(6) Motion to Dismiss and dismiss the TAC with prejudice.

Respectfully submitted,

Dated: April 17, 2026

*/s/ Joseph E. Hopkins*
Joseph E. Hopkins (Bar No. JH1078)
PELLIS LAW GROUP, LLP
37 North Broadway, Suite 1
Nyack, NY 10960
jhopkins@pellislaw.com

*Attorneys for Defendant, The City of New York*

---

[5] Plaintiff also argues that, "[a]t minimum, the Court should not rule on futility on the notice of claim ground while the integrity of the primary evidentiary record on that issue remains unresolved." (ECF No. 57 at 28.) However, the City's futility argument is *not* based on the GML § 50-h record but on the TAC. Finally, there is no unresolved integrity issue; Plaintiff's claim regarding "irregularities" is unsupported by any evidence of custody, control, or intent on the part of the City or by any evidence that there is any testimony missing or altered.

**WORD COUNT CERTIFICATION**

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing memorandum of law was prepared on a computer using Microsoft Word. *Word Count*. The total number of words in this memorandum of law, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, signature block, and this Statement is 3,496.

/s/ *Joseph E. Hopkins*
Joseph E. Hopkins

**CERTIFICATE OF SERVICE**

Pursuant to Docket Entry 3, Plaintiff consents to electronic service.  Therefore, I hereby certify that I have caused a true and correct copy of the foregoing document to be served electronically via ECF this 17th day of April, 2026, to Plaintiff.

/s/ *Joseph E. Hopkins*
Joseph E. Hopkins

11