UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

JOSEPHINE M. JULES,

Plaintiff,

- against -

THE CITY OF NEW YORK,

Defendant.

---------------------------------------------------------- X

**OPINION AND ORDER DENYING MOTION TO DISMISS**

24 Civ. 10056 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff Josephine M. Jules, proceeding pro se, brings claims against the City of New York (the "City") alleging negligence, gross negligence, and fraudulent misrepresentation. Plaintiff's claims arise out of her exposure to harmful substances in the aftermath of the 9/11 terrorist attacks and the City's alleged duty to limit her exposure. The City moved to dismiss Plaintiff's Third Amended Complaint ("TAC"), arguing that Plaintiff's claims are barred by her failure to serve a timely notice of claim and that the TAC fails to state a claim because Plaintiff has not alleged that the City owed her a special duty. For the following reasons, the motion is denied.

## BACKGROUND

Plaintiff alleges that from before September 11, 2001 until March 2002 she resided at 100 John Street, New York, NY, which is situated near the World Trade Center Disaster site and within the high-exposure band to toxic environmental contaminants arising from the 9/11 terrorist attacks and collapse of the World Trade Center Towers. TAC ¶¶ 110–113.

After the attacks, Plaintiff alleges that she requested an inspection of her apartment to assess air safety, and that in response a Federal Emergency Management Agency ("FEMA")

representative acting in coordination with the City went to her apartment. Plaintiff alleges that the representative did not conduct any tests, but assured Plaintiff that the air was safe and provided Plaintiff with a small HEPA air filtration machine. TAC ¶¶ 142–145. Plaintiff further alleges that following the 9/11 attacks, the City issued various public statements advising residents that it was safe to remain in their residences and workplaces in the exposure zone because the air quality had been tested and deemed safe. TAC ¶¶ 116–122. Plaintiff alleges that she relied on these public statements and assurances of the representative of safety when deciding to remain in her apartment, and, as a result, she was exposed to harmful substances that caused her latent injuries.

In July 2015, Plaintiff alleges that she was diagnosed with Left-Ventricular non-compaction Cardiomyopathy (LVNC), now referred to as Nonischemic Cardiomyopathy (NICM), a genetic heart condition. TAC ¶ 36. Beginning November 4, 2022, Plaintiff sought care with the World Trade Center Clinic for lung-related symptoms, including feeling like she was "not getting proper air." TAC ¶¶ 45–50. Plaintiff was initially diagnosed with Asthma and Rhinosinusitis. TAC ¶ 50. Plaintiff sought a second opinion, meeting with another physician and receiving additional tests, including a CT scan on April 14, 2023. TAC ¶¶ 52–58.

Plaintiff alleges that in October 2023, she began experiencing new symptoms including whole-body tremors, skin changes, and systemic illness. TAC ¶¶ 97–99. Plaintiff alleges that she was not aware of the manifestation of her disease until October 2023 when these new symptoms emerged. TAC ¶¶ 97–99. Plaintiff alleges that she was diagnosed on or around April 25, 2024 with Restrictive Lung Disease, Early-Interstitial Lung Disease (ILD), and Interstitial Lung Abnormalities (ILA), and that the diagnoses were based on her April 2023 CT scan and other diagnostics performed in January 2024. TAC ¶¶ 100–101. Plaintiff also alleges that she was later diagnosed with additional latent injuries, including New-Onset Cardiac Late Gadolinium Enhancement, Hepatic Steatosis-Toxicant-Associated Fatty Liver Disease,

Bronchiectasis, Myositis, New-Onset Autoimmune Rheumatic Disease, Autoimmune Smith/RNP, Idiopathic Inflammatory Myopathies, and Mixed Connective Tissue Disease.

Plaintiff filed a notice of claim, pursuant to New York General Municipal Law § 50-e, on December 13, 2023. Plaintiff filed her Complaint in this action on December 23, 2024. After seeking leave to amend on multiple occasions, she filed the Third Amended Complaint on January 6, 2026. The City moved to dismiss on January 20, 2026, and briefing completed on April 17, 2026. Plaintiff alleges that as a result of the City's negligence and misrepresentations to her in the aftermath of 9/11, she suffered harm and these latent injuries. Plaintiff seeks damages for medical costs, pain and suffering, loss of income, emotional distress, and other damages.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief,' . . . or where a plaintiff has 'not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[.]'" *Durr v. Slator*, 558 F. Supp. 3d 1, 15 (N.D.N.Y. 2021) (quoting *Twombly*, 550 U.S. at 558, 570). Pro se litigants are not exempt from these pleading standards, but courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Pro se complaints are read with a "special solicitude" to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted).

## DISCUSSION

### I. Plaintiff's claim is timely.

New York law requires, as a condition precedent to filing suit, that a plaintiff in any tort action must serve a notice of claim upon a New York municipal entity within ninety days after his or her claim arises. New York General Municipal Law ("GML") § 50-e(1)(a); *Matter of Jaime v. City of New York*, 237 N.E.3d 796, 802 (N.Y. 2024).

After the ninety days have elapsed, a plaintiff may seek leave to file late notice of claim with the supreme court or county court. GML § 50-e(5). Such leave must be sought before the expiry of the statute of limitations period, and courts may not extend the time to serve a late notice of claim beyond the statute of limitations period. GML § 50-e(5); *Lubin v. City of New York*, 50 N.Y.S.3d 405, 407 (N.Y. App. Div. 2d Dep't 2017). For Plaintiff's claim, that time period is one year and ninety days from the date that the claim accrued. GML § 50-e(5); *see also Matter of Goffredo v. City of New York*, 830 N.Y.S.2d 11, 12 (N.Y. App. Div. 1st Dep't 2006). For purposes of GML § 50-e, a "claimed injury result[ing] from exposure to a harmful substance . . . accrues upon discovery of the manifestations or symptoms of the latent disease that the harmful substance produced." *Matter of Goffredo*, 830 N.Y.S.2d at 12.

Under this framework, Plaintiff was required to file a notice of claim within ninety days after the symptoms of her latent disease manifested. The key question, therefore, is when Plaintiff's latent disease manifested.

First, Plaintiff's heart condition is not a manifestation of the latent injuries at issue in the TAC and is not relevant for determining the time of symptom manifestation. The City contends that Plaintiff's diagnosis with LVNC/NICM is part of her allegation of a "cascade of injuries" that was included in her December 2023 Notice of Claim, and that, therefore, her symptoms date back to July 2015 when her heart condition was discovered. However, Plaintiff alleges that LVNC/NICM is a genetic condition, not caused by any alleged exposure to harmful

substances after 9/11, and therefore not a manifestation of her symptoms. Despite including the condition in her Notice of Claim, the TAC does not allege that the latent injuries she suffered include the LVNC/NICM heart condition. *See* TAC ¶ 170. Thus, I do not construe Plaintiff's claim as seeking recovery for her LVNC/NICM heart condition. Plaintiff's reference to LVNC/NICM in the background section of her complaint and in the notice of claim does not change the core of the relief sought. Such a reading is particularly warranted given Plaintiff's pro se status.

Second, Plaintiff alleges that her symptoms did not manifest until October 2023, such that her December 13, 2023 notice of claim was timely. The City argues that the symptoms manifested, at the latest, in November 2022. I hold that Plaintiff has properly alleged an October 2023 manifestation date, such that the claims are timely. Plaintiff alleges that she first sought treatment for lung-related symptoms on November 4, 2022. In December 2022, she was diagnosed with obstructive airway disease (asthma) and chronic rhinosinusitis. TAC ¶¶ 45–58. Plaintiff sought a second opinion on these diagnoses and, after further tests, was again diagnosed with obstructive-airway asthma following a pulmonary function test on March 7, 2023.

Plaintiff alleges that in October 2023, she began experiencing new and more extreme symptoms, including whole-body tremors, skin changes, and systemic illness. TAC ¶¶ 97–99. Plaintiff then received additional diagnostics in January 2024, and on April 25, 2024, Plaintiff was diagnosed, based on her April 2023 CT scan and the January 2024 diagnostics, with Restrictive Lung Disease, Early-Interstitial Lung Disease, and Interstitial Lung Abnormalities, and with new-onset rheumatologic systemic autoimmune disease. TAC ¶¶ 100–101. Plaintiff alleges that only after the October 2023 symptoms manifested did she have notice of her claim and that that she experienced no objective manifestation or symptoms of her latent diseases until then. Plaintiff contends that the earlier respiratory diagnoses, which the TAC characterizes as

misdiagnoses later contradicted by her own physicians, were not manifestations of the latent disease that the exposure produced. TAC ¶¶ 97–101, 137.

Construing the TAC liberally in Plaintiff's favor as a pro se plaintiff, I hold that she has sufficiently alleged that the latent disease did not manifest until October 2023. Plaintiff alleges that she did not begin experiencing the systemic and more extreme symptoms that she complains of until October 2023, and filed her timely December 13, 2023 notice of claim thereafter. The City may be able to show, as a question of fact, that Plaintiff had earlier notice of her claim based on her actions in November 2022. However, for the purposes of the motion to dismiss, I decline to find that her claim is untimely.

## II. Plaintiff states a claim for negligence, gross negligence, and fraud.

The City argues that even if Plaintiff's claim is timely, the TAC fails to state a claim for negligence, gross negligence, or fraud because Plaintiff fails to allege a special relationship. While such an allegation is required for negligence and gross negligence, I hold that Plaintiff adequately makes such allegations and accordingly deny the motion to dismiss.

Under New York law, to state a claim for negligence or gross negligence a plaintiff must plead "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Klein v. Cath. Health Sys. of Long Island, Inc.*, 220 N.Y.S.3d 757, 762 (N.Y. App. Div. 2d Dep't 2024). A claim for gross negligence additionally requires "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 193 (E.D.N.Y. 2024) (citation omitted). Further, for a government to be liable for negligent performance of a government function, a plaintiff must establish that "there existed a special duty to the injured person, in contrast to a general duty owed to the public." *McLean v. City of New York*, 905 N.E.2d 1167, 1171 (N.Y. 2009); *Pelaez v. Seide*, 2 N.Y.3d 186, 198 (2004) ("a duty to exercise reasonable care

toward the plaintiff" is "born of a special relationship between the plaintiff and the governmental entity"). Claims of gross negligence also require a special relationship. *See Rennix v. Jackson*, 59 N.Y.S.3d 57, 60 (N.Y. App. Div. 2d Dep't 2017).

The City additionally argues that a claim for fraud requires allegations of a special duty. That is not so. Common-law fraud requires a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance, and resulting damage. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). The special-relationship requirement the City invokes is a limitation on municipal liability for the negligent performance of a governmental function, not an element of an intentional-fraud claim. *See McLean*, 905 N.E.2d at 1171. The only authority the City offers for importing a special-duty requirement into a fraud claim, *Downing v. New York City Housing Authority*, 117 N.Y.S.3d 464 (Table) (N.Y. Sup. Ct. Kings Cnty. 2019), is an unreported trial-court decision that does not bind this Court. In any event, the point is academic because Plaintiff has adequately alleged a special duty.

Here, Plaintiff has sufficiently pleaded that the City assumed a special duty to Plaintiff. The assumption of a special duty requires: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Tara N.P. v. W. Suffolk Bd. of Co-op. Educ. Servs.*, 71 N.E.3d 950, 954 (N.Y. 2017); *Cuffy v. City of New York*, 69 N.Y.2d 255, 513 N.Y.S.2d 372, 505 N.E.2d 937, 940 (1987). "Absent a special relationship, a plaintiff cannot recover against a municipality" for negligence in performing a government function. *Taunus Corp. v. City of New York*, 279 F. Supp. 2d 305, 310 (S.D.N.Y. 2003).

To establish such a special duty, Plaintiff alleges that she called the City to request an inspection and test of the air quality in her home to confirm whether it was safe to occupy. In direct response to that call, Plaintiff alleges that a FEMA representative, acting on behalf of the City, came to her apartment, assured her that the air was safe, and gave her a small HEPA filtration unit. TAC ¶¶ 142–145. Plaintiff alleges that she relied on that specific assurance, and additional public statements about the safety of the air in her neighborhood, in deciding to remain in her home. TAC ¶¶ 142–145. This is sufficient to allege a special duty at this stage. Plaintiff alleges that the City, through the actions of a federal agent working in conjunction with the City and in response to a call directly to the City, made promises to Plaintiff upon which she reasonably relied. This meets the requirements for assumption of a special duty under *Cuffy*. *Cuffy*, 69 N.Y.2d at 260.

Therefore, Plaintiff has adequately alleged the necessary special duty owed by the City to state a claim and the City's motion to dismiss is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is denied. The Clerk of Court shall terminate ECF No. 41.

SO ORDERED.

Dated: August 10, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge